UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

ALEXANDR SOROKIN,

               Defendant.

------------------------------------X

10 Cr. 437-01 (RWS)

AMENDED SENTENCING
OPINION

**Sweet, D.J.**

      On June 16, 2010, Alexandr Sorokin, a/k/a "Ashwin Patel," ("Sorokin" or "Defendant") pleaded guilty to one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  For the reasons set forth below, Sorokin will be sentenced to fifteen months' imprisonment to be followed by two years' supervised release.  Sorokin will also be required to pay a special assessment of $100.

**Prior Proceedings**

      On May 19, 2010, Indictment 10 CR 437-01 (RWS) was filed in the Southern District of New York.  Count 1 charges

District of New York and elsewhere, Sorokin conducted financial transactions affecting interstate and foreign commerce knowing that the transactions were designed to conceal the nature of the proceeds of bank fraud.

On June 16, 2010, Sorokin appeared before the Honorable Frank Maas in the Southern District of New York and allocuted to Count 1 pursuant to a written plea agreement.

Sorokin failed to appear for his sentencing on September 20, 2010. On February 18, 2011, Sorokin was apprehended by the NYPD and transferred to federal authorities on February 22, 2011. On February 23, 2011, Sorokin appeared in the Southern District of New York and was remanded to custody.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the

2

sentence to be imposed here is the result of a consideration of:

    (1)   the nature and circumstances of the offense and
          the history and characteristics of the defendant;

    (2)   the need for the sentence imposed —

          (A)   to reflect the seriousness of the offense,
                to promote respect for the law, and to
                provide just punishment for the offense;

          (B)   to afford adequate deterrence to criminal
                conduct;

          (C)   to protect the public from further crimes of
                the defendant; and

          (D)   to provide the defendant with needed
                educational or vocational training, medical
                care, or other correctional treatment in the
                most effective manner;

    (3)   the kinds of sentences available;

    (4)   the kinds of sentence and the sentencing range
          established for —

          (A)   the applicable category of offense committed
                by the applicable category of defendant as
                set forth in the guidelines . . .;

    (5)   any pertinent policy statement . . . [issued
          by the Sentencing Commission];

    (6)   the need to avoid unwarranted sentence
          disparities among defendants with similar
          records who have been found guilty of
          similar conduct; and

    (7)   the need to provide restitution to any victims of
          the offense.

18 U.S.C. § 3553(a).   A sentencing judge is permitted to find

all the facts appropriate for determining a sentence, whether

that sentence is a so-called Guidelines sentence or not.  See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Sorokin's personal and family history.

**The Offense Conduct**

The following description draws from the PSR.  The specific facts of the underlying conduct are adopted as set forth in that report.

On October 5, 2009, Sorokin was observed using a debit card to withdraw a large amount of funds by a branch manager of a Bank of America branch in Manhattan, New York.  The account was not held under Sorokin's name, but under the name "Ashwin Patel."  The account had been opened with an initial deposit of $25 on September 23, 2009, and received a wire transfer in the amount of $8,000 on October 5, 2009, from a Bank of America branch in Texas.

While Sorokin was present at the Manhattan branch, Bank of America notified the New York City Police Department (NYPD) of Sorokin's attempted transaction.  Shortly thereafter, NYPD officers arrived at the bank and arrested Sorokin.

Subsequently on October 5, 2009, the Federal Bureau of Investigation (FBI) was contacted by an investigator at Bank of America.  The assigned FBI case agent then went to the NYPD precinct where Sorokin was being held to interview him, with the aid of a Russian interpreter.  After being advised of and waiving his Constitutional rights, Sorokin explained that in August 2009, Sorokin was looking at job postings in Russian-language newspapers and on the Internet.  Upon responding to one of these advertisements, Sorokin met with an individual outside

5

a subway station in Brooklyn, NY. At that meeting, the individual explained that the job involved working for a company based in Ireland that did not have the authority to open bank accounts in the United States. As a result, that company needed people to receive money in the U.S., which ultimately would be transferred back to the individual.

Sorokin initially declined to accept the job because it did not appear to be legitimate and, in fact, appeared to be similar to schemes Sorokin had heard about in the past. After the initial meeting, the individual called Sorokin at least twice to determine whether Sorokin would take the job, which Sorokin declined.

In September 2009, Sorokin contacted the individual to accept the job because Sorokin needed money. The individual informed Sorokin that he would receive a temporary debit card and account information in the mail, and that Sorokin was to call the individual to learn the personal identification number (PIN) for the account. Sorokin received by mail a temporary debit card along with the name, date of birth, and physical address of the holder of the account associated with the card.

On October 4, 2009, Sorokin called the individual to obtain the PIN for the card and additional instructions. The individual informed Sorokin that $8,000 would be wired into the account, and that Sorokin was to go to various branches of Bank of America to attempt to withdraw that amount from the account using the temporary debit card and PIN. The individual instructed Sorokin that, once the funds were withdrawn, he was to call the individual to make arrangements to return the money. The individual told Sorokin that he could withdraw the funds at a teller window of a Bank of America branch using only the debit card and PIN, and that no other identification was needed. The individual added that if Sorokin was unsuccessful, he should try different branches of Bank of American until he successfully obtained the money. The individual instructed Sorokin to start with Bank of America branches located near Times Square and 42nd Street in Manhattan because those branches were the most crowded. For this work, the individual told Sorokin that he could keep five to ten percent of the withdrawn funds.

On the morning of October 5, 2009, Sorokin attempted to withdraw $8,000 at two different branches of Bank of America in Manhattan, but he was unsuccessful. Sorokin then unsuccessfully attempted to withdraw $3,000 at another Bank of

7

America branch in Manhattan where he was arrested by the NYPD.

The FBI case agent subsequently determined that the unauthorized $8,000 wire transfer on October 5, 2009 was made from a Bank of America account in Texas.  When contacted by the case agent, the owner of the company which held that account noted that several weeks prior to the wire transfer, certain company employees received e-mail messages that purported to be from the company's payroll service.  These e-mail messages requested that the company employees download software related to a purported update to the payroll service's online application.  According to the owner, it appears that these e-mails were not from the payroll service but were "spoofs" designed to induce company employees to download malicious software that would compromise the company's computer data.

Sorokin was arrested by the FBI on October 6, 2009. According to the FBI case agent, the individual who hired Sorokin has not been apprehended.  Although Bank of America initially executed a fraudulent wire transfer of $8,000, they returned the funds to the correct account after Sorokin's arrest by the NYPD.

8

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. § 1956(a), the maximum term of imprisonment is 20 years.

If a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

Defendant is eligible for probation of not less than one or more than five years, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine that may be imposed is $500,000, pursuant to 18 U.S.C. § 1956(a).  A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2010 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a). Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment are as

9

follows:

The guideline for the violation of 18 U.S.C. § 1956(a)(1)(B)(i) is found in § 2S1.1. According to § 2S1.1(a)(2), the base offense level for the instant offense is eight, plus the number of corresponding levels from the table in § 2B1.1 corresponding to the value of the laundered funds. As the value of the laundered funds was $8,000, an increase of two levels is applicable, pursuant to § 2B1.1(b)(1)(B). Therefore, the base offense level is 10.

Because Defendant was convicted under 18 U.S.C. § 1956, an increase of two levels is applicable, pursuant to § 2S1.1(b)(2)(B).

Defendant initially failed to appear for sentencing on September 20, 2010, and he was not apprehended until February 18, 2011. Pursuant to § 3C1.1, as the Defendant willfully obstructed justice with respect to sentencing of the instant offense of conviction, the offense level is increased by two levels.

Pursuant to Application note 4 of § 3E1.1, conduct

10

resulting in an enhancement under § 3C1.1 (Obstruction of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. As such, Sorokin is not afforded any reduction in the offense level under § 3E1.1.

Accordingly, the applicable offense level is 14.

On March 9, 2010, Sorokin was arrested for jumping the turnstile in the New York City subway system and charged with Intent to Obtain Transportation Without Paying. On March 10, 2010, Sorokin pleaded guilty to Disorderly Conduct was sentenced in the Brooklyn Criminal Court to a conditional discharge and two days' community service. Pursuant to §§ 4A1.1(a) and 4A1.2(c)(1), this conviction warrants zero criminal history points.

A total of zero criminal history points establishes a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 14 and a Criminal History Category of I, the Guidelines range for imprisonment is

11

15 to 21 months.

The Guidelines range for a term of supervised release is two to three years, pursuant to § 5D1.2(a)(2). If a term of imprisonment of one year or less is imposed, a term of supervised release is not required, but is optional, pursuant to § 5D1.1(b).

Because the applicable Guidelines range is in Zone D of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5b1.1, application note #2.

The fine range for the instant offense is $4,000 to $500,000, pursuant to § 5E1.2(c)(3) and (4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in <u>Booker</u>, 543 U.S. 220, and the Second Circuit's decision in <u>Crosby</u>, 397 F.3d 103.  Upon consideration of all of the relevant factors, it is concluded that the imposition of a Guideline sentence is warranted.

**The Sentence**

For the instant offense, Sorokin will be sentenced to fifteen months' imprisonment and two years' supervised release.

Sorokin is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release.  It is recommended that Sorokin be supervised by the district of his residence.

As mandatory conditions of his supervised release, Sorokin shall:  (1) not commit another federal, state, or local

13

crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2) Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the Probation Officer, based on ability to pay or availability of

14

third-party payment.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for September 28, 2011.

It is so ordered.

New York, NY
September  23 , 2011

_____
ROBERT W. SWEET
U.S.D.J.